IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MARCELO FEDERICO BIANCHI-MONTAÑA,

    **Plaintiff**,

        **v.**            **CIVIL NO.** 09-1409 (FAB)

PABLO CRUCCI-SILVA, *et al.*,

    **Defendants**.

## OPINION & ORDER[1]

BESOSA, District Judge.

    Before the Court is a motion by defendants Alvardo Nazor-Verdi ("Nazor") and A.P.G.M. Restaurant Holdings, Corp. ("APGM") to dismiss plaintiff's claims for breach of contract and mental anguish. Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), Nazor and APGM assert that all of plaintiff's viable claims are barred by a statute of limitations. (Docket No. 16.)

    On May 5, 2009, plaintiff Marcelo Federico Bianchi-Montaña ("Bianchi") filed a claim for breach of contract and mental anguish under Puerto Rico Civil Code, 31 P.R. Laws Ann. tit. 31, §§ 3052 and 5141. (Docket No. 7.)

---

[1] Margaret-Ann Scotti, a second year student at Georgetown University Law Center, assisted in the preparation of this Opinion and Order.

Bianchi alleges that he entered into a contract with Nazor, APGM, and three other defendants in this case,[2] by which, in exchange for Bianchi managing the establishment of a restaurant, Ummo Argentinian Grill, in San Juan, Puerto Rico, Bianchi was entitled to:  (1) twenty percent of the restaurant's net profits, and (2) a position as manager at the restaurant with a four thousand dollar monthly salary.  Bianchi claims that Nazor, APGM, and the other defendants breached the contract by never providing him this compensation.  (Docket No. 7 at 23.)

## I.   BACKGROUND

### A.   BIANCHI'S ALLEGATIONS

In his complaint, Bianchi alleges that the following events occurred.

In July 2007, Bianchi, Nazor, Crucci, and Figoli began to discuss the prospect of establishing an Argentine-style restaurant in San Juan, Puerto Rico.  (Docket No. 7 at 9.)  In August 2007, the discussions had culminated into a business plan and agreements for labor and compensation among the participants.  (Docket No. 7 at 10-11.)  Nazor had agreed to secure a loan for six hundred thousand dollars, the estimated capital needed for initial restaurant operations.  (Docket No. 7 at 10.)  In exchange for

---

[2] These three defendants are Pablo Crucci-Silva ("Crucci"), Gerardo Felipe Figoli-Gomez ("Figoli"), and Neo Design and Build, Corp. ("Neo").  They have not joined the motion to dismiss.

Civil No. 09-1409 (FAB)                                                 3

procuring the financing, Nazor would be entitled to forty percent of the restaurant's profits.  (Docket No. 7 at 10.)  Crucci, Figoli, and Bianchi agreed to each provide fifty thousand dollars' worth of labor, namely the "required project management, design construction, and other required services."  (Docket No. 7 at 10.)  They would provide these services by acting through Neo, a corporation they formed in January 2006 to do business jointly (Docket No. 7 at 6).  In exchange for these services, "[r]ather [than] NEO receiving any payment," the agreement provided that Bianchi, Crucci and Figoli would each be compensated with twenty percent of the restaurant's profits.  (Docket No. 7 at 10.)  In addition, Nazor, Bianchi, Crucci and Figoli agreed that "if either CRUCCI, FIGOLI, or BIANCHI decided to work as managers of the restaurant operation they would receive a salary of $4,000.00 a month as compensation."  (Docket No. 7 at 10-11.)

On September 11, 2007, Nazor, Crucci, Figoli and Bianchi formed APGM[3] "for the construction and operation of the restaurant."  (Docket No. 7 at 12.)  By the third week of November 2007, the restaurant project was "well under way" with construction of the restaurant's interior, the filing of permit applications, the recruiting of personnel, and the development of procedures for

---

[3] The initials of the corporation represented the first names of Nazor, Crucci, Figoli, and Bianchi, respectively: A for Alvaro, P for Pablo, G for Gerardo, and M for Marcelo.  (Docket No. 7 at 12.)

Civil No. 09-1409 (FAB)                                                         4

the restaurant's operation.  (Docket No. 7 at 14.)  Among other things, Bianchi asserts that he developed customer protocols, recruited personnel, including the head chef, and collaborated with Nazor in several areas, including human resources, marketing, and development of the restaurant's operating procedures.  (Docket No. 7 at 14.)

   The situation turned on December 11, 2007, when Crucci and Figoli informed Bianchi that Bianchi "no longer would own . . . [his share] of Neo,"[4] and that the corporation was "dissolved." (Docket No. 7 at 16.)  Crucci and Figoli also stated that they informed Nazor that they did not want Bianchi to be involved in any way with APGM.  (Docket No. 7 at 16-17.)  On December 17, 2007, Nazor told Bianchi that he had no objections to Bianchi participating in APGM, but "if CRUCCI and FIGOLI did not want to honor their agreement, there was nothing that [Nazor] could do to force them to comply."  (Docket No. 7 at 16-17.)  The next day, Bianchi discovered that all the documentation related to Neo and APGM had been removed from Neo's designated office.  (Docket No. 7 at 17.)

---

[4] Besides the Ummo Argentinian Grill project, Bianchi, Crucci, and Figoli conducted various other projects through Neo and possibly expected compensation through Neo for those projects.  (See, e.g., Docket No. 7 at 9 for discussion on their "Acquamarina project.")

Ummo Argentinian Grill opened in February 2008, and Bianchi estimates that its profits exceed four hundred thousand dollars per month and would likely increase[5]. (Docket No. 7 at 19-20.) As of the date of the complaint, defendants had not provided any of the allegedly agreed-upon compensation to Bianchi. (Docket No. 7 at 20.)

**B.   PROCEDURAL HISTORY**

On May 5, 2009, Bianchi filed his claim for breach of contract and mental anguish pursuant to articles 1077 and 1802 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. tit. 31, §§ 3052 and 5141. (Docket No. 7.)

On June 30, 2009, Nazor and APGM filed a motion to dismiss pursuant Rule 12(b)(6), asserting that all claims against them are not in contract, but in tort and are thus barred by the statute of limitations for tort claims pursuant to article 1868(2) of the Civil Code, P.R. Laws Ann. tit. 31, §5298(2). (Docket No. 16.) First, they assert that neither Nazor nor APGM made final agreements with Bianchi, and thus, because no contract was ever formed, the plaintiff's claim to employment compensation falls under the Puerto Rico tort doctrine of *culpa in contrahendo*, which

---

[5] While the record stipulates that Bianchi expects the restaurant's profits to "increase[,] resulting in profits in excess of $3,000.00 per day," the Court notes that this amount would be a marked decrease in profits from the previously stated $400,000 per month. (Docket No. 7 at 16.)

requires parties to negotiate in good faith.  See, e.g., Ysiem Corp. v. Commercial Lease Realty, Inc., 328 F.3d 20 (1st Cir. 2003).  Second, Nazor and APGM argue that the claim of mental anguish is a tort and time-barred.  Bianchi, Nazor, and APGM agree that the events giving rise to the claim took place in December 2007.[6]  Bianchi did not file his claim until approximately one year and five months after these events took place.  (Docket No. 7.)

On July 15, 2010, Bianchi filed an opposition to Nazor and APGM's motion to dismiss, averring that he did not allege pre-contractual negotiations, but sufficiently pleaded "*actual agreements*" showing that a valid contract was executed; thus, Bianchi claims that the applicable statute of limitations is found under contract law, and the claim is not time-barred.  (Docket No. 20.)  Bianchi did not address Nazor and APGM's claim for dismissal of Bianchi's mental anguish claim.

On July 27, 2010, Nazor and APGM filed a reply to Bianchi's opposition to the motion to dismiss.  In their reply, Nazor and APGM addressed two aspects of the alleged employment agreement.  First, Nazor and APGM claim that they had only made an agreement with Bianchi's employer, Neo, to compensate Bianchi with twenty

---

[6] In his complaint, Bianchi alleges that he was "deprive[d] . . . of his right to the agreed to compensation" on December 11, 2007. (Docket No. 7 at 21.) In the motion to dismiss, Nazor and APGM claim that tolling started no later than December 17, 2007, the last time the parties communicated.  (Docket No. 16.)

Civil No. 09-1409 (FAB)                                                    7

percent of the restaurant's profits.  (Docket No. 25 at 3.) Second, Nazor and APGM claim that they made no final agreement with Bianchi to employ him as a manager at the restaurant.  (Docket No. 25 at 3-5.)  It is unclear from their reply whether they concede that they negotiated directly with Bianchi, instead of with Neo, for the management position at the restaurant.

## II.  CHOICE OF LAW

As an initial matter, the Court finds that Puerto Rico law applies to the claims raised in this case.  Pursuant to the holding in <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64, 78(1938), matters of tort and contract are state substantive law, which must be applied when the federal court is sitting in diversity jurisdiction.  <u>See, e.g.</u>, <u>Crellin Tech., Inc. v. Equipmentlease Corp.</u> 18 F.3d 1, 4 (1st Cir. 1994) (applying state substantive law to determine whether a contract was enforceable); <u>Sylvania Elec. Prod. v. Barker</u>, 228 F.2d 842, 848 (1st Cir. 1956) (applying state

Civil No. 09-1409 (FAB)                                                       8

substantive law to a tort personal injury claim).[7]  Statute of limitations for civil suits is also a question of substantive law, so the applicable state law controls whether Bianchi's claim is time-barred.  Rodriguez v. Suzuki Motor Corp., 570 F.3d 402, 406 (1st Cir. 2009) ("In Puerto Rico, the prescription of civil actions is a question of substantive rather than procedural law . . . [therefore] we must apply Puerto Rico substantive law to resolve the statute of limitations issue"); Montalvo v. Gonzalez-Amparo, 587 F.3d 43, 46 (1st Cir. 2009) ("When applying Puerto Rico law to substantive matters, Puerto Rico courts also apply Puerto Rico's statute of limitations, as well as the concomitant tolling provisions of those statutes"); Valedon Martinez v. Hosp. Presbiteriano de la Comunidad. Inc., 806 F.2d 1128, 1133 (1st. Cir. 1986)(same).

For substantive matters, a federal court presiding over a diversity case must apply the choice of law doctrine of the forum

---

[7] Although the defendants do not challenge the existence of diversity jurisdiction, the Court notes that plaintiff has alleged that he is a resident of Florida, the defendants all reside in Puerto Rico, and that the damages in the present case exceed $75,000.  (See Docket No. 7 at ¶¶ 2-8, 61, 67, 72.)  Defendants admit residency in Puerto Rico in their answer to the complaint and present no serious challenge to diversity jurisdiction.  (See Docket Nos. 16 & 17.)  Accordingly, the Court finds the complaint includes the necessary allegations to invoke original subject matter jurisdiction pursuant to 28 U.S.C. §1332.  See 28 U.S.C. § 1332; Stewart v. Tupperware Corp., 356 F.3d 335, 337-38 (1st Cir. 2004).

Civil No. 09-1409 (FAB)                                                9

territory.  New Ponce Shopping Center, S.E. v. Integrand Assur. Co., 86 F.3d 265, 267 (1st Cir. 1996) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)).  Puerto Rico, the forum territory in this case, applies the "dominant or significant contacts" test for contract and tort actions, by which the law of the jurisdiction with the most significant contacts to the claim is applied to the case.  New Ponce Shopping Center, 86 F.3d 265 at 267 (citing A.M. Capen's Co. v. American Trading & Prod. Corp., 74 F.3d 317, 320 (1st Cir.1996)).  Based on the record available, the Court finds that essentially all the significant contacts related to the present claim were made in Puerto Rico.  There appears to be no dispute that all discussions and work related to the joint projects among the parties, including the execution of the alleged employment compensation agreement, took place in Puerto Rico.  In addition, these joint projects were to be executed in Puerto Rico.  (See Docket No. 1, 16.)  The only other jurisdiction relevant to this case is Miami, Florida, of which Bianchi is a citizen, but no events related to the alleged agreement took place there.  The Court will therefore apply Puerto Rico law to the present claim.

### III.  MOTION TO DISMISS STANDARD

Pursuant to Rule 12(b)(6), a complaint should be dismissed when a plaintiff does not "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949

Civil No. 09-1409 (FAB)                                              10

(2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face if it "raises a right to relief above the speculative level," Bell Atl. Corp., 550 U.S. at 570, by pleading sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Ashcroft, 129 S.Ct. at 1949.  The Court will accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor. Id.; see also Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 51 (1st Cir. 1990).  The Court need not credit, however, "bald assertions [and] unsupportable conclusions" when evaluating the complaint's allegations, Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996), nor "accept as true a legal conclusion couched as a factual allegation," Bell Atl. Corp., 550 U.S. at 570 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

With regard to raising an affirmative defense on statute of limitations grounds, "the facts establishing the defense [must be] clear 'on the face of the plaintiff's pleadings.'"  Trans-Spec Truck Serv., Inc., 524 F.3d 315, 320 (1st Cir. 2008) (quoting Blackstone Realty LLC v. FDIC, 244 F.3d 193, 197 (1st Cir. 2001)). "Where the dates included in the complaint show that the limitations period has been exceeded and the complaint fails to 'sketch a factual predicate' that would warrant the application of

Civil No. 09-1409 (FAB)                                                     11

either a different statute of limitations period or equitable estoppel, dismissal is appropriate." Id. (citing LaChappelle v. Berkshire Life Ins. Co., 142 F.3d 507, 509-510 (1st Cir. 1998); Blackstone Realty, 244 F.3d at 197).

The statute of limitations for tort claims under Puerto Rico law is one year, Santana-Castro v. Toledo-Davila, 579 F.3d 109, 114 (1st Cir. 2009) (citing P.R. Laws Ann. tit. 31, §5298(2)), whereas the statute of limitations for contract claims is either three years under the Commercial Code, P.R. Laws Ann. tit. 10, § 1908, or fifteen years under the Civil Code, P.R. Laws Ann. tit. 31, § 5294; see Caribbean Mushroom Co. v. Government Dev. Bank of P.R., 102 F.3d 1307 (1st Cir. 1996).

## IV.   ANALYSIS

### A.   Article 1802 Claim

Bianchi claims that the defendants' negligent "deprivation of [his] employment rights" under the alleged employment agreements caused him "severe mental anguish and anxiety," making defendants liable under Article 1802 of the P.R. Civil Code, P.R. Laws Ann. tit. 31, § 5141.  (Docket No. 7 at 24-25.)  Mental anguish is a tort claim which, under Puerto Rico law, has a prescriptive period of one year from the time plaintiff "knows or has reason to know of the injury which is the basis for his claim." Santana-Castro, 579 F.3d at 114 (quoting Rodríguez Narváez v. Nazario, 895 F.2d 38, 41

Civil No. 09-1409 (FAB)                                                    12

(1st Cir. 1990)).  Bianchi claims that he was first notified that he would be "deprive[d] . . . of his right to the agreed to compensation" on December 11, 2007.  (Docket No. 7 at 21.)  Because he did not file his claim until approximately a year and five months later, on May 5, 2009, his claim of mental anguish against Nazor, APGM, and all other defendants is time-barred and **DISMISSED WITH PREJUDICE**.

**B.   Contract Claims**

The true point of contention at this stage is whether Bianchi's claim in regard to employment compensation falls under contract or tort law and, accordingly, which statute of limitations applies.  Under Puerto Rico law, there are three requirements for a valid contract:  (1) the consent of the contracting parties; (2) an object of the contract; and (3) the cause for the obligation.  Soto v. State Chemical Sales Co. Intern., Inc., No. 09-1270, 2010 WL 1328956 (D.P.R. March 26, 2010) (citing P.R. Laws Ann. tit. 31, § 3391).  Puerto Rico law also provides for liability for non-final agreements under tort law if there has been bad faith negotiating that blocked finalization of an agreement.  See generally Producciones Tommy Muñiz, Inc. v. Copan, 113 D.P.R. 517 (1982) (describing the history of and applying the doctrine of *culpa in contrahendo*).

Bianchi alleges that Nazor, APGM, and the other defendants entered an employment compensation agreement pursuant to which Bianchi would manage the construction of the Ummo Argentinian Grill. (Docket No. 7 at 10-11.) According to Bianchi, all parties agreed that in exchange for fifty thousand dollars' worth of his labor, he was entitled to: (1) twenty percent of the net profit of the restaurant, and (2) a management position at the restaurant with a monthly salary of four thousand dollars. Id.[8] Based on Bianchi's well-pleaded factual allegations and reasonable inferences made in his favor, the Court will determine whether Bianchi, Nazor, and APGM plausibly made a contract that entitled Bianchi to this compensation.

*i. Consent of the contracting parties:*

Pursuant to article 1214 of the Civil Code, consent is shown "by the concurrence of the offer and acceptance of the thing and the cause which are to constitute the contract." P.R. Laws Ann. tit. 31, 3401; see also Marrero-García v. Irizarry, 33 F.3d 117, 122 (1st Cir. 1994). Additionally, there must be a "meeting of the minds as to the terms agreed upon." K-Mart Corp. v. Davis, 756 F. Supp. 62, 66 (D.P.R. 1991) (finding that the parties did not reach

---

[8] Although no such agreement was apparently written, Puerto Rico has frequently upheld oral contracts not prohibited by the Statute of Frauds. See, e.g., Muniz-Olivari v. Stiefel Laboratories, Inc., 496 F.3d 29, 36 (1st Cir. 2007).

Civil No. 09-1409 (FAB)                                                      14

a final contract because the text of the agreement evidenced the defendant's intent not to be bound until the parties had finalized negotiations); see also Soc. de Gananciales v. Velez & Asoc., 145 D.P.R. 508, 517 (1998) (holding that a valid contract requires "a meeting of minds that gave rise to an obligation, situation, or state of law resulting from an agreement, and that created certain expectations on the basis of which the parties acted").  If the language of the parties is unclear, article 1233 of the Civil Code provides that the terms of the contract be determined by examining the intent of the parties "in light of the parties' 'contemporaneous and subsequent' acts." Ponce Federal Bank, F.S.B. v. Ramiro Colon, No. 92-1331, 1996 WL 590274, at 11* (D.P.R. Sept. 26, 1996) (citing P.R. Laws Ann. tit. 31, §§ 3471, 3472 (1991)). "If there were any obscurity in the language, [however] the clause must . . . be construed against the originator of the language." Autoridad de Energia Electrica de Puerto Rico v. Ericsson Inc., 201 F. 3d 15, 18 (1st Cir. 2000) (citing P.R. Laws Ann. tit. 31, § 3478).

   With regard to Bianchi's share in the restaurant's profits, Nazor and APGM claim that they made no agreement with Bianchi for individual compensation.  Rather, they only entered into a compensation agreement with the corporation, Neo, and Bianchi performed services as an employee of Neo, not as an individual or

Civil No. 09-1409 (FAB)                                                  15

as part of APGM. (Docket No. 25 at 3.) In his complaint, Bianchi asserts the following: Rather [than] NEO receiving any payment for said services, it was agreed by *all* that in exchange for their contribution of such services, CRUCCI, FIGOLI, and BIANCHI would be each entitled to twenty percent (20%) of the net proceeds of the restaurant operation." (Docket No. 7 at 10; emphasis added.) From the face of the complaint, the Court can reasonably infer that "*all*" parties, including Bianchi and Nazor, agreed to the individual compensation. Although Bianchi's complaint states that all parties agreed that Bianchi would "as part of NEO" provide project management and other services to the value of $50,000, it also states that he would be directly compensated, "[r]ather [than] NEO receiving any payment for said services." (Docket No. 7 at 10.) It is thus plausible that Bianchi directly entered into an employment compensation agreement with Nazor (and by extension APGM), even though Bianchi performed services on behalf of Neo.

Regarding the agreement's provision for employing Bianchi at the restaurant, Nazor and APGM alleged that they reached no final agreement with Bianchi. (Docket No. 25 at 2.) They claim that any statement about employing Bianchi as a manager in the restaurant was a "presupposition," because the restaurant had not yet opened. (Docket No. 25 at 2.) Thus, Nazor and APGM assert that only the

Civil No. 09-1409 (FAB)                                            16

Puerto Rico tort doctrine of *culpa in contrahendo*, or "fault in negotiating," would apply to this claim.

In Bianchi's complaint, following his allegation that he entered an agreement entitling him to a portion of the restaurant's profits, Bianchi asserts the following: "Additionally, it was agreed by NAZOR, CRUCCI, FIGOLI and BIANCHI that if either CRUCCI, FIGOLI, or BIANCHI decided to work as managers of the restaurant operation they would receive a salary of $4,000.00 a month as compensation." (Docket No. 7 at 10-11.) The word "additionally," as quoted above, establishes Bianchi's belief that he would be given a management position as compensation for his work on the restaurant, constituting the "cause for the obligation" along with the twenty percent of the restaurant's profits. Bianchi's recollection of the agreement makes it plausible that Bianchi entered into an employment compensation agreement with Nazor and APGM that included the management position at the restaurant.

b.   *An object of the contract and cause for the obligation.*

Articles 1223 and 1226 of the Civil Code define both the second and third elements of a contract - object of a contract and the cause for the obligation - liberally. "All things, even future ones, which are not out of the commerce of man, may be the object of a contract." <u>Puerto Rico Elec. Power Authority v. Action Refund</u>, 483 F. Supp. 2d 153, 158 (quoting P.R. Laws Ann. tit. 31,

Civil No. 09-1409 (FAB)                                                    17

§ 3421).  Similarly, "[c]ause [for the obligation] encompasses almost any motivation a person might have for entering into a binding agreement." Puerto Rico Elec. Power Authority, F. Supp. 2d at 158 (citing Garita Hotel Ltd. P'shp. v. Ponce Fed. Bank, F.S.B., 954 F. Supp. 438, 449 (D.P.R. 1996).

Again, Bianchi alleges that "in exchange for their contribution of such services, CRUCCI, FIGOLI, and BIANCHI would be each entitled to twenty percent (20%) of the net proceeds of the restaurant operation . . . additionally, it was agreed . . . that if either CRUCCI, FIGOLI, or BIANCHI decided to work as managers of the restaurant operation they would receive a salary of $4,000.00 a month as compensation."  (Docket No. 7 at 10-11.)  The complaint sufficiently pleads that there was an "exchange" of an object (Bianchi's services) for a cause for the obligation (a share in the restaurant's profits and a management position at the restaurant). While the word "additionally" could signal that the management position was part of a separate agreement being negotiated by the parties, thus causing the agreement for the management position to lack consideration, the Court must continue to make all reasonable inferences in the plaintiff's favor in response to a Rule 12(b) motion.  The Court thus finds it plausible that both the share in the restaurant's profits and the management position were part of the same agreement for Bianchi's services.

**D.   STATUTE OF LIMITATIONS**

The Court finds it plausible based on the record at this stage of pleadings that Nazor, APGM, and Bianchi entered into a valid contract for the stipulated compensation.  Accordingly, the applicable statute of limitations is found under contract law: three years under article 946 of the Commercial Code, P.R. Laws Ann. tit. 10, § 1908, or fifteen years under article 1864 of the Civil Code, P.R. Laws Ann. tit. 31, § 5294.  That part of the complaint is thus not time-barred.

### III.   CONCLUSION

For the reasons described above, the Court **GRANTS IN PART AND DENIES IN PART** Nazor and APGM's motion to dismiss (Docket No. 16). Plaintiff's claim of mental anguish is **DISMISSED WITH PREJUDICE** as time-barred.  Plaintiff's claim as to the employment compensation agreement is not time-barred and thus survives the motion to dismiss.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, June 30, 2010.

                              s/ Francisco A. Besosa
                              FRANCISCO A. BESOSA
                              UNITED STATES DISTRICT JUDGE